UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
MARVIN WINKFIELD,

              Petitioner,

   -against-

GEORGE DUNCAN, Superintendent, Great Meadow
Correctional Facility, and ERIC T. SCHNEIDERMAN,
Attorney General of the State of New York,

              Respondents.
------------------------------------------------------------------ X

12-CV-3237 (ARR)

OPINION AND ORDER

ROSS, United States District Judge:

After Petitioner filed a habeas petition challenging his conviction for several crimes involving rape, Dkt. #1, at 1, respondent requested that the state court record be sealed to protect the identity of the individual whom petitioner had been convicted of raping. Dkt. # 10, 13. As a precautionary measure, I ordered that this case be temporarily sealed pending further evaluation of respondent's request. Dkt. # 11. Thereafter, I directed the parties to submit letters to the court addressing whether the case should remain sealed to non-case participants. After examining the relevant circumstances, I now conclude that the case should be unsealed in its entirety.

## I.    LEGAL STANDARD

It is well established that the common law recognizes "a general right to inspect and copy public records and documents, including judicial records and documents." Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978); accord Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119 (2d Cir. 2006). "The presumption of access is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the

1

administration of justice." United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995) ("Amodeo II"); see also United States v. Aref, 533 F.3d 72, 83 (2d Cir. 2008) ("Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification.") (internal quotation marks omitted).

However, the public's presumptive right of access to court files and records is not absolute. Nixon, 435 U.S. at 598. Rather, the decision as to access is "one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Id. at 599. "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action . . . ." DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 826 (2d Cir. 1997).

In deciding whether to seal documents, a court should examine three factors. See Lugosch, 435 F.3d at 119-20); see, e.g., In re Gushlak, No. 11-MC-0218 (NGG)(JO), 2012 WL 3683514, at *1-2 (E.D.N.Y. July 27, 2012). "First, it must determine whether the documents at issue are 'judicial documents,' to which a presumption of access applies." Id. at *1 (citing Lugosch, 435 F.3d at 119) (internal quotation marks omitted). "In order to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" Lugosch, 435 F.3d at 119 (quoting United States v. Amodeo, 44 F.3d 141, 145 (2d Cir. 1995) ("Amodeo I")). To satisfy this test, "[i]t is sufficient that the document was submitted to the Court for purposes of seeking or opposing an adjudication." United States v. Sattar, 471 F. Supp. 2d 380, 385 (S.D.N.Y. 2006); see also Gushlak, 2012 WL 3683514, at *2 ("Legal briefing 'used by parties moving for, or opposing' a dispositive motion fall on the end of the continuum subject to the strongest presumption of access.") (quoting Lugosch, 435 F.3d at 123).

2

Second, if the documents in question are "judicial documents," then the court must determine how much weight to assign to the presumption of access. See Lugosch, 435 F.3d at 119. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Amodeo II, 71 F.3d at 1049. The presumptive right to public access "is at its apogee when asserted with respect to documents relating to 'matters that directly affect an adjudication.'" Gambale v. Deutsche Bank AG, 377 F.3d 133, 140 (2d Cir. 2004) (quoting Amodeo II, 71 F.3d at 1049).

Finally, the court must "balance competing considerations" against the presumption of access. Lugosch, 435 F.3d at 120. The Second Circuit has held that "the privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." S.E.C. v. TheStreet.Com, 273 F.3d 222, 232 (2d Cir. 2001) (alteration in original) (internal quotation marks omitted). In considering what weight to assign to privacy interests, the court should consider not only "the degree to which the subject matter is traditionally considered private rather than public," but also "the nature and degree of injury." Amodeo II, 71 F.3d at 1051.[1]

---

[1] A qualified presumption of access to judicial documents also exists under the First Amendment. See Lugosch, 435 F.3d at 124. The test for overcoming this qualified constitutional right is "more stringent" than the corresponding common law criteria. Id. Specifically, a court must consider two factors: whether the documents "'have historically been open to the press and general public' and whether 'public access plays a significant positive role in the functioning of the particular process in question.'" Id. at 120 (quoting Press-Enter. Co. v. Superior Court, 471 U.S. 1, 8 (1986)). Although substantial overlap exists between the First Amendment and common law rights of access, the "First Amendment demands broader disclosure than the common law." Gushlak, 2012 WL 3683514, at *3 (internal quotation marks omitted). "Documents subject to a qualified First Amendment right of access 'may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" Id. (quoting Lugosch, 435 F.3d at 120). Because I conclude that the common law right of public access to the state court record should prevail over respondent's request for sealing, I necessarily reach the same conclusion under the First Amendment inquiry.

## II. ANALYSIS

Respondent has requested that the New York state court records, Dkt. #9, submitted as exhibits to his response to the court's order to show cause, be sealed. These records primarily include the transcript of Winkfield's criminal trial and the briefs relating to his direct appeal. The totality of circumstances weighs in favor of lifting the seal.

As an initial matter, the state court records constitute "judicial documents." They were "submitted to the Court for purposes of seeking or opposing an adjudication," Sattar, 471 F. Supp. 2d at 385, of Winkfield's habeas petition, and are undoubtedly critical to the "performance of the judicial function," Lugosch, 435 F.3d at 119 (internal quotation marks omitted). Accordingly, the presumption of access applies to the state court record of petitioner's criminal trial and direct appeal. See id.

Second, the presumption of access is at its apex here, because the court must rely directly on the state court record to adjudicate the merits of Winkfield's petition. See Gambale, 377 F.3d at 140. Insofar as the presumption "is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice," Amodeo I, 71 F.3d at 1048, the presumption applies all the more powerfully in this case, where Winkfield challenges that state judicial process that led to and sustained his conviction; among other claims, petitioner alleges that the state appellate court wrongfully affirmed his conviction based on an "erroneous reading," Dkt. #1, at 3, of the trial court record.

Finally, as for countervailing considerations, respondent's sealing request is based on the privacy interests of the individual whom petitioner was convicted of raping. Dkt. #13, at 4. Our society has undoubtedly recognized that victims of sexual assault have a strong interest in keeping their identities private. See, e.g., N.Y. Civ. Rights Law § 50-b(1) (prohibiting public

4

officers from disclosing court documents that identify sex offense victims); The Florida Star v. B.J.F., 491 U.S. 524, 537 (1989) (recognizing that the privacy of sexual offense victims is a "highly significant" interest). In addition, to the extent that it is possible to make generalizations regarding the "the nature and degree of injury," Amodeo II, 71 F.3d at 1051, arising from disclosure of victims' identities, one court has observed:

> Historically, an exaggerated concern for female chastity and a regrettable inclination to blame the victim for sexual assaults, along with society's general respect for sexual privacy, have resulted in an atmosphere in which victims of sexual assault may experience shame or damage to reputation. It would be callous to pretend that this atmosphere has entirely dissipated, or to insist that victims of such assault lack privacy interests because most people today understand that the attacker, not the victim, should be stigmatized and ashamed.

Doe v. Del Rio, 241 F.R.D. 154, 159 (S.D.N.Y. 2006); see also Deobrah S. v. Diorio, 583 N.Y.S.2d 872, 881 (acknowledging that "more rape victims are choosing to 'come out'" but concluding "that choice of dignity must remain with the victim"); Dkt. #13, at 2-3 (citing a number of cases within this circuit that have, without explicitly weighing the competing interests in secrecy versus disclosure, either sealed or redacted documents to protect the identity of sexual assault victims).

In support of his sealing request respondent also cites § 50-b of New York's Civil Rights Law, which provides:

> The identity of any victim of a sex offense . . . shall be confidential. No . . . court file or other documents, in the custody or possession of any public officer or employee, which identifies such a victim shall be made available for public inspection. No such public officer or employee shall disclose any portion of any . . . court file, or other document, which tends to identify such a victim . . . .

N.Y. Civ. Rights Law § 50-b(1); see also Deborah S., 583 N.Y.S.2d at 880 (explaining that amendments to § 50-b to include adults, as well as a private cause of action for sex offense victims who are injured by wrongful disclosure of their identities, were in part motivated by the

understanding that "[c]oncerns pertaining to privacy sometimes result in a victim failing to report a sexual offense") (quoting 1991 N.Y. Sess. Laws 2211-2212 (McKinney)). However, "this statute does not provide that all court records are to be sealed, as requested by respondent. It merely provides that these documents be kept confidential." Roe v. Senkowski, No. 9:98-CV-0656 (NAM)(GLS), 2001 U.S. Dist. LEXIS 23754, at *2 (N.D.N.Y. Feb. 20, 2001).

After weighing the competing interests discussed above, I now conclude that the victim's privacy interests, while significant, do not justify sealing the state court record. See, e.g., Roe, 2001 U.S. Dist. LEXIS 23754, at *2 (recognizing the "substantial" privacy interest of the sexual offense victim but concluding that sealing the case was unwarranted). In so concluding, I note that respondent has only generally invoked the "sensitive nature," Dkt. #10, of the crime and the privacy interests that any rape victim might possess due to the undeniably traumatic nature of sexual assault and our society's attitudes toward it. Respondent has made no particularized showing as to "the nature and degree of injury," Amodeo II, 71 F.3d at 1051, that this victim may uniquely suffer if her identity is disclosed. Notably, the victim testified under her own name at petitioner's criminal trial, and respondent has made no representation that the victim herself has expressed a desire to keep her identity confidential. Indeed, as petitioner points out, the victim previously brought a successful civil action for a different rape, the facts of which—including her identity—are fully set forth in a published judicial opinion. See Genao v. State, 679 N.Y.S.2d 539 (N.Y. Ct. Cl. 1998).

### III. CONCLUSION

It is hereby ordered that this case be unsealed in its entirety twenty-one days after the date of this order. Should respondent wish to request that the victim's name be redacted from, and/or replaced by her initials in, the court files and documents for this case, he must submit a letter to

the court setting forth the legal and factual bases for that request within seven days of the date of this order. Petitioner's response, if any, shall be made within fourteen days of the date of this order.

SO ORDERED.

/S/ Judge Allyne R. Ross
———————————————
Allyne R. Ross
United States District Judge

Dated: January 24, 2012
Brooklyn, New York